<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                            )
CHUNFANG LIN,                               )
                                            )
                        Plaintiff,          )
                                            )   Civil Action No. 09-5579 (GEB)
v.                                          )
                                            )   **MEMORANDUM OPINION**
GREEN BROOK NAILS, LLC, JASON LI            )
HAIXIA ZU, JUN LI,                          )
                                            )
                        Defendants.         )
_____ )

**<u>BROWN, Chief Judge</u>**

      This matter comes before the Court upon the motion to dismiss filed by Defendants Green Brook Nails, LLC, Jason Li, Haixia Zu, and Jun Li (collectively "Defendants"). (Doc. No. 2.) Plaintiff Chunfang Lin ("Plaintiff") opposes Defendants' motion. (Doc. No. 3.) The Court has reviewed the parties' submissions and decided the motion without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons that follow, the Court will deny Defendants' motion to dismiss.

**I.  BACKGROUND**

      The following are relevant factual allegations in the complaint filed by Plaintiff on November 2, 2009. (Doc. No. 1.) Plaintiff began her employment with Defendant Green Brook Nails, LLC ("Green Brook") as a nail technician on or about April 26, 2005. (Pl.'s Compl. ¶ 12; Doc. No. 1.) Defendant Jason Li ("Mr. Li") is the owner of Green Brook, where Defendants Zu

and Jun Li (respectively "Ms. Zu" and "Ms. Li") are both managers.  (Id. ¶¶ 6–8.)  Plaintiff states that during her employment at Green Brook she worked approximately 57 hours per week, and she received a salary of $100 per eight hour work day.  (Id. ¶¶ 13, 14 .)  Regardless of whether Plaintiff worked over eight hours per day, she received this base salary and no overtime pay.  (Id. ¶ 15.)  Plaintiff was terminated as a Green Brook employee on or about September 7, 2008.  (Id. ¶ 41.)

Plaintiff claims that her termination was in retaliation for a series of complaints she made to and about Defendants.  (Id. ¶ 41.)  Specifically, after approximately two years of employment, Plaintiff complained to Green Brook about her lack of overtime pay.  (Id. ¶ 16.)  Plaintiff also reported Green Brook's overtime violations to the U.S. Department of Labor.  (Id. ¶ 17.)  Thereafter, Plaintiff again requested overtime pay from Green Brook.  (Id. ¶ 18.)  Plaintiff then filed a complaint with the New Jersey Office of the Attorney General, Division of Consumer Affairs.  (Id. ¶¶ 19.)  That complaint, however, related to Plaintiff's assertion that several other Green Brook employees, including Ms. Zu and Ms. Li, were not licensed nail technicians.  (Id. ¶¶ 20, 21.)  After Plaintiff complained about Ms. Zu and Ms. Li to the Division of Consumer Affairs, those employees began to threaten Plaintiff to stop her various complaints.  (Id. ¶¶ 24, 27)  As a result of these threats from Ms. Zu and Ms. Li, Plaintiff fainted and was sent to the emergency room.  (Id. ¶ 26.)

Despite the threats, Plaintiff filed additional complaints against Defendants with various government entities.  (Id. ¶¶ 28, 29.)  On December 6, 2007, Plaintiff filed a formal complaint to the U.S. Department of Labor relating to unpaid overtime, and subsequently the U.S. Department of Labor informed Plaintiff that it had started an investigation.  (Id. ¶ 29, 31.)  On December 11,

2007, Plaintiff filed a formal complaint with the New Jersey Office of Attorney General, Division of Consumer Affairs to report unlicensed practice at Defendant's business.  (Id. ¶ 29.)  In early 2008, a license inspector came to Green Brook but found no violations because as, Plaintiff claims, Mr. Li instructed the unlicensed employees to flee.  (Id. ¶ 32, 33.)  Subsequently, Plaintiff contacted the Division of Consumer Affairs to explain what had occurred during the inspection.  (Id. ¶¶ 36, 37.)  Shortly thereafter, Plaintiff began receiving threatening phone calls that warned her to "not make trouble" for Defendants.  (Id.)  Plaintiff later admitted to Ms. Zu that she was the person making complaints and she was again threatened.  (Id. ¶¶ 38, 39.)  Plaintiff then wrote a letter to Ms. Zu and Ms. Li on August 31, 2008, and therein argued that she was receiving unfair treatment.  (Id. ¶ 40.)  A short time later, on September 7, 2008, Plaintiff's employment with Green Brook was terminated.  (Id. ¶ 41.)

Based upon the foregoing allegations, Plaintiff lodges the following claims against Defendants in her complaint: violations of the overtime wages requirement of the Fair Labor Standards Act ("FLSA") ("Count I"); New Jersey Wage and Hour Law ("Count II"); retaliation under FLSA ("Count III"); and a violation of the New Jersey State Conscientious Employers Protection Act ("CEPA") ("Count IV").  (Doc. No. 1.)

The present action in this Court, however, is not the first filed by Plaintiff that arises from Plaintiff's Green Brook employment and termination.  (Doc. No. 2-2, 6)  Currently, Plaintiff maintains a suit against Green Brook in the New Jersey Superior Court, Law Division, Middlesex County (the "state court action").  (Id.)  In the state court action, Plaintiff lodges six claims against Green Brook: (1) unlawful termination of Plaintiff as retaliation; (2) emotional distress caused by her termination; (3) failure to pay overtime wages in breach of contract; (4)

failure to pay vacation pay in breach of contract; (5) failure to pay hospital expenses in breach of contract; (6) infliction of emotional distress as a result of her termination and loss of employment opportunities.  (Id. at 6–10.)

On December 8, 2009, Defendants filed their present motion to dismiss Plaintiff's complaint.  Plaintiff filed a brief in opposition to the motion to dismiss on December 21, 2009.  (Doc. No. 3.)  Defendants filed a brief in response on December 23, 2009, to which Plaintiff responded via letter on December 31, 2009.  (Doc. Nos. 4, 5.)

II.    DISCUSSION

In the present motion, Defendants argue that Plaintiff's state court action is parallel to the instant federal action, and therefore the Court should abstain and dismiss this case.  (Defs.' Br. 4, Doc. No. 2-1.)  In her opposition brief, Plaintiff correctly identifies Colorado River as the abstention doctrine at issue, and contends that Colorado River abstention is not appropriate in this case.  (Pl.'s Br. In Opp'n, 7; Doc. No. 3.)  In their reply brief, Defendants argue that if the Court does not abstain and dismiss this case under the Colorado River doctrine, that the Court should stay this action.  (Defs.' Reply Br. 7; Doc. No. 4.)

The Supreme Court of the United States held in Colorado River Water Conservation District v. United States that there may be "circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration."  424 U.S. 800, 818 (1976).  However, the Court made clear that dismissal is warranted only under exceptional circumstances and that "only the clearest of justifications will warrant dismissal."  Id.  The doctrine is an extremely narrow one as "federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress."  Quackenbush v.

4

Allstate Ins. Co., 517 U.S. 706, 716 (1996).

The threshold requirement for Colorado River abstention is a contemporaneous parallel judicial proceeding. "For judicial proceedings to be parallel, there must be identities of parties, claims, and time." IFC Interconsult, AG v. Safeguard Int'l Partners, LLC, 438 F.3d 298, 306 (3d Cir. 2006). "Once the state and federal cases are found to be parallel . . . an inquiry . . . is conducted under the factors set forth in Colorado River and its progeny." Ryan v. Johnson, 115 F.3d 193, 196 (3d Cir. 1997) (citing Trent v. Dial Medical, 33 F.3d 217, 225 (3d Cir. 1994)). The inquiry requires the Court to consider the following six factors: (1) whether there is an in rem case where a court first assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) whether federal or state law controls; and (6) whether the state court will adequately protect the interests of the parties. See Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 23, 26 (1983); Colo. River Water Conservation Dist., 424 U.S. at 818.

Here, assuming arguendo that Plaintiff's federal and state actions are parallel, the Court's application of foregoing six factor Colorado River analysis yields the conclusion that abstention is not appropriate in this case. As to the first factor, in rem jurisdiction is not a consideration in either Plaintiff's federal or state action. Therefore, this factor does not weigh in favor of abstention. As to the second factor, the federal courthouse in Trenton, NJ and the state courthouse Middlesex County, NJ are a relatively short distance apart. Thus, any venue-based inconvenience to the parties is de minimis. See Travelers Indem. Co. v. Madonna, 914 F.2d 1364, 1368 (9th Cir. 1990) (finding that the 200 mile distance between the state and federal court

was not sufficiently great such that the factor pointed toward abstention).  Therefore, this factor does not weigh in favor of abstention.

As to the third factor, this case does not implicate any clear federal policy to avoid piecemeal litigation.  See Spring City Corp. v. American Bldgs. Co., 193 F.3d 165, 172 (3d Cir. 1999).  The federal claims asserted by Plaintiff are under the FLSA which, in section 218(a) states that "[n]o provision of this Act . . . shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this Act." 29 U.S.C. § 218(a) (2006).  "Generally, as between state and federal courts, the rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction . . . .' Colo. River Water Conservation Dist., 424 U.S. at 817 (citing McClellan v. Carland, 217 U.S. 268, 282 (1910)).  Furthermore, "the general rule regarding simultaneous litigation of similar issues in both state and federal courts is that both actions may proceed until one has come to judgment." Spring City Corp., 193 F.3d at 172.  Therefore, this factor does not weigh in favor of abstention.

As to the fourth factor, Plaintiff's state court action is not so advanced as to make consideration of the issues in federal court duplicative.  "Priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 21 (1983).  The state court has only advanced to the discovery stage, and no dispositive motions have been filed.  While the state action was filed first, this fact does not control.  Therefore, this factor does not weigh in favor of abstention.

As to the fifth factor, the presence of federal issues "must always be a major

consideration weighing against surrender" of jurisdiction.  See Moses H. Cone Mem'l Hosp., 460 U.S. at 26.  Here, there are two federal claims that arise under the FLSA.  Therefore, this factor does not weigh in favor of abstention.

The sixth factor is the only one that could weigh in favor of abstention.  Because 29 U.S.C. § 216 does not confer exclusive jurisdiction on federal courts, state courts have concurrent jurisdiction to hear FLSA claims.  Thus, Congress developed a framework in which Plaintiff's interests concerning federal overtime pay and retaliation could be adequately protected in state court.  Therefore, this factor could weigh in favor of abstention.

In sum, however, five of the six relevant factors the Court has considered do not weigh in favor of abstention.  Further, the Court determines that this case presents no exceptional circumstances that warrant the Court surrendering its "virtually unflagging obligation" to exercise jurisdiction.  Therefore, the Court concludes abstention under Colorado River and its progeny is not appropriate in this case.  See Colo. River Water Conservation Dist., 424 U.S. at 817–818 (citing England v. Medical Examiners, 375 U.S. 411, 415 (1964)).

As a final point, the Court shall briefly address Defendants' alternate argument, that the Court should stay this case because of the pending state court action.  That argument fails for the following two reasons.  First, Defendants did not argue that this action should be stayed in their moving brief. (Defs.' Mot. Br.; Doc. No. 2-1.)  Rather, Defendants raised the issue for the first time in their reply, after Plaintiffs correctly identified Colorado River as the applicable abstention doctrine in their opposition brief.  Therefore, Defendants' untimely assertion that the Court should stay this action is procedurally improper and fails for that reason.  Second, it is clear that the standard for staying a case under Colorado River is identical to the standard for abstaining

and dismissing a case under Colorado River.  See Spring City Corp. v. Amer. Bldgs. Co., 193 F.3d 165, 171 (3d Cir. 1999).  As the Court has explained, Colorado River abstention is inappropriate in this case.  Therefore, staying this case is also inappropriate.

### III.     CONCLUSION

For the reasons above, the Court will deny Defendants' motion to dismiss.  (Doc. No. 2.)  An appropriate form of order accompanies this memorandum opinion.

Dated: March 10, 2010

                                                                /s/ Garrett E. Brown, Jr.
                                              GARRETT E. BROWN, JR., U.S.D.J.